UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

JASON L. HUNT,                                        Case No. DG 17-02283
                                                     Chapter 13
                    Debtor.                           Hon. Scott W. Dales

_____/


MEMORANDUM OF DECISION AND ORDER

PRESENT:   HONORABLE SCOTT W. DALES
           Chief United States Bankruptcy Judge


On June 19, 2018, Keller & Almassian PLC (the "Firm") filed its second Petition for Interim Allowance of Fees for Attorney for the Debtor (ECF No. 44, the "Fee Application") seeking an award of fees under 11 U.S.C. § 330(a)(4)(B) ostensibly for representing chapter 13 debtor Jason L. Hunt (the "Debtor") in his bankruptcy case.  Although the Fee Application drew no objection, the court independently reviewed it[1] and set the matter for hearing, which took place on August 16, 2018, in Grand Rapids, Michigan.

On the eve of the hearing, the Firm filed its Supplement to Second Petition for Interim Allowance of Attorney Fees for the Debtor (ECF No. 48, the "Supplement").  The Firm and the chapter 13 trustee appeared through counsel at the hearing and, after listening to their argument, the court took the matter under advisement.

From the itemization filed in support of the Fee Application, it appears that many time entries, though not all,[2] pertain to a company (Lakeland Mills, LLC) in which the Debtor and his father are equal (50%) members, and a real estate transaction involving the Debtor's parents' newly-formed limited liability company.  His parents formed Jateca, LLC to purchase the building that Lakeland was leasing from a third-party, intending that Jateca would then lease it to Lakeland

---

[1] *In re Copeland*, 154 B.R. 693, 697 (Bankr. W.D. Mich. 1993) (court has an obligation to examine the propriety of fees and expenses requested under § 330 even in the absence of objection).

[2] The entries predating February 8, 2018, all fall within the usual reporting and counseling functions involved in representing a chapter 13 debtor in connection with his case.  The time spent, the rates charged, and expenses incurred are reasonable, beneficial, and necessary (and therefore compensable through an award under § 330(a)(4)(B)).

on more favorable terms. In this way, the Debtor's extended family hoped to improve the family business and, indirectly, benefit the Debtor as half owner. The Debtor, however, does not derive any Schedule I income from Lakeland, but instead earns his living through separate employment.

In the Supplement, the Firm summarizes the transaction and its connection to the Debtor's case as follows:

> The majority of the services provided relates to assisting Debtor's parents and Lakeland Mills LLC finance and purchase their manufacturing building in Edmore, Michigan and save approximately $5,000.00 per month in lease expense. Debtor's 50% interest in Lakeland Mills LLC would then have more value as well as his parents. The unsecured creditors being paid a liquidation value of $61,112.00 through the Chapter 13 would not be changed.

*See* Supplement at p. 3. The explanation, however, does not assuage the court's initial concern that the fees for this transaction lack a sufficient connection with the case, and may not qualify for approval under § 330.

For the most part, § 330 provides for compensating bankruptcy estate professionals—trustees, examiners, ombudsmen and other professionals (including counsel) employed under §§ 327 or 1103—by authorizing the court to make awards that become a cost of administration under § 503(b)(2), entitled to priority treatment under § 507(a)(1)(C) and (a)(2). This list of professionals within § 330(a)(1) excludes those who represent debtors (rather than the bankruptcy estate) because a debtor's professionals are not employed by the estate under §§ 327 and 1103, they are employed only by the debtor under applicable state law. *Lamie v. United States Trustee*, 540 U.S. 526 (2004); 28 U.S.C. § 1652.[3]

The limitation of awards to estate professionals under § 330(a)(1), however, is subject to an important exception relevant to this case:

> In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

---

[3] Unlike the fees of trustees' counsel, which are subject to review under § 330, the bankruptcy-related fees of debtors' counsel are subject to scrutiny under § 329 and Fed. R. Bankr. 2017.

11 U.S.C. § 330(a)(4)(B).  Under this exception, the court may award compensation to a debtor's attorney for representing the interests of the debtor, not necessarily the estate, if the services are "in connection with the bankruptcy case," beneficial and necessary to the debtor, and subject to the usual standards for reviewing professional fees set forth in the statute.[4]

As a textual matter, and even in the absence of objection, the court is not at liberty to award fees to the Firm under § 330(a)(4)(B) for "assisting Debtor's parents and Lakeland Mills LLC finance and purchase their manufacturing building in Edmore, Michigan." *See* Supplement at p. 3.  The statute compensates attorneys *for individual debtors* who assist them "in connection with" their chapter 12 and 13 cases.  By its own account, the Firm is seeking compensation, to some extent, for assisting non-debtor individuals (the Debtor's parents) and two artificial, non-debtor entities (Lakeland and Jateca).  *See* 11 U.S.C. § 330(a)(4)(B).

At the hearing, the Firm's counsel emphasized the benefits the work bestowed on Lakeland in terms of rent reductions and a friendlier landlord, and the possibility that the Debtor may realize some financial gain if Lakeland makes a future distribution to its members or becomes more valuable through resulting cost savings.  It is fair to say, however, that the financial benefit to the Debtor is contingent on Lakeland's success and therefore somewhat remote.  Regardless, a court does not make an award under § 330(a)(4)(B) merely upon a showing that the services benefitted the debtor—the statute lists several requirements, including a nexus to the bankruptcy proceeding.  A benefit to the debtor is a necessary but not sufficient condition under the statute. For example, providing representation to a chapter 13 debtor in a criminal or family law proceeding may benefit the debtor, but these services are not thereby "in connection with" the bankruptcy case and, strictly speaking, do not qualify as an expense of administration.  *Cf. In re Bressman*, 327 F.3d 229, 240 (3rd Cir. 2003) (criminal counsel for chapter 7 debtor not performing services "in connection" with case under § 329); *In re Swartout*, 20 B.R. 102 (Bankr. S.D. Ohio 1982) (services related to a chapter 13 debtor's divorce proceeding were not connected to the bankruptcy case within the meaning of § 329).[5]  The cost of such representation is not compensable under § 330(a)(4)(B) just

---

[4] In addition to applying the factors listed in § 330(a)(3), the court generally employs the lodestar analysis when reviewing any fee application, whether from a debtor's or trustee's attorney.  *Boyd v. Engman (In re Engman)*, 404 B.R. 467, 477 (W.D. Mich. 2009) (citing *In re Boddy*, 950 F.2d 334, 337 (6th Cir. 1991)).

[5] Given the "presumption that equivalent words have equivalent meaning when repeated in the same statute," the court regards the cases under § 329 as helpful in understanding this case under § 330(a)(4)(B), as both sections use the parallel phrase "in connection with" a case under title 11.  *Cohen v. de la Cruz*, 523 U.S. 213, 220 (1998) (similar phrases within the same statute should have similar meanings).

because it occurs while the chapter 13 case remains pending. So, even accepting the beneficial impact of the services in the Debtor's case, the court must nevertheless identify which entries meet the other statutory requirements and which do not. *See* 11 U.S.C. § 330(a)(2) (court may on its own motion award less compensation than requested); *id.* § 330(a)(4)(B) (requirements).

According to Debtor's counsel, the U.S. Small Business Administration facilitated the Lakeland-Jateca transaction but required a guaranty from the Debtor, presumably because he holds a 50% membership interest in Lakeland. The Debtor's parents evidently asked him to sign a guaranty so that their transaction could proceed as they had planned. Certainly, a debtor's family life does not end with the filing of a bankruptcy petition, and there may be times when familial ties pull a debtor in a direction that requires the advice of counsel. Courts, counsel, and interested parties must be flexible (within statutory constraints) to recognize this fact of life.

Here, the Debtor's family needed his help, and his interest in the family business made it necessary for him to participate in the refinancing. His confirmed plan, however, forbids him from incurring most types of debt without court approval (including contingent obligations under a guaranty), so he filed a motion for authority to sign the guaranty. The court granted that motion, without opposition. Given the terms of the Debtor's plan, and the requirement of court approval, the court finds that time entries regarding the Debtor's guaranty reflect necessary services "in connection with the case." And, given the possible benefits to the Debtor from Lakeland, and the Debtor's involvement in his parents' business, the legal services provided some "benefit" to him. The court, therefore, will allow some compensation under § 330(a)(4)(B) for counsel's time advising the Debtor about the guaranty and for seeking court approval to comply with the plan.

The difficulty, of course, lies in identifying which of the other Lakeland or Jateca-related entries are compensable as involving representation of the Debtor "in connection with the case," and which are not.

After carefully reviewing the itemization, the court has decided to reduce the requested award by $2,490, finding that several entries reflect services that are not "in connection with" the Debtor's case, or not for representing his interests. More specifically, the court will reduce fees incurred on the following dates in 2018: March 8 ($30 reduction); April 17 ($120); April 20 ($150); April 23 ($90); April 30 ($90); May 1 ($240); May 7 ($150); May 10 ($120); May 11 ($330); May 16 (reducing two entries by $150); May 21 (reducing two entries by $180); May 22 (reducing five

entries by $360); an entry on June 8 ($60); June 11 ($270); June 12 ($120); and June 13 ($30). The court concludes that counsel's post-confirmation services on these dates crossed the line between representing the Debtor "in connection with the bankruptcy case" on the one hand and representing his parents (and other non-debtor entities) on the other.

Debtor's counsel suggests that the approval of the Fee Application as filed would not reduce the ultimate recovery that creditors will receive under the plan because they will share the liquidation value, regardless of any fee award. This may be true, but even a fee award that does not materially affect creditors cannot qualify under § 330(a)(4)(B) unless the services are for representing the debtor in connection with his bankruptcy case, and necessary and beneficial to him. Moreover, it seems likely that a substantial fee award, which will be paid as a priority ahead of unsecured creditors, will delay payments to unsecured creditors or extend the duration of the plan.

Finally, nothing in this opinion disparages in any way the services that the Firm performed, and indeed, they appeared reasonable and, as a matter of state law, recoverable from the client or whoever agreed to pay for them. *See In re Acevedo*, No. 12-06576-swd, 2015 WL 3373030, at *5 (Bankr. W.D. Mich. Jan. 26, 2015) (relying on the Rules of Decision Act to hold that no court approval is required when counsel is not seeking payment from non-estate property). Today's decision, however, simply declares that the court will not approve all of the fees as a priority claim and cost of administration under §§ 330(a)(4)(B), 503(b)(2), and 507(a)(3) because the Firm has failed to establish (to the extent described above) that all of the fees relate to representing the Debtor in connection with the bankruptcy case.

NOW, THEREFORE, IT IS HEREBY ORDERED that the fees and expenses itemized in the Fee Application (ECF No. 44) are APPROVED under § 330(a)(4)(B) in the amount of $6,322.49 and DISAPPROVED to the extent of $2,490.00.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Jason L. Hunt, A. Todd Almassian, Esq., James M. Keller, Esq., Brett N. Rodgers, Esq., Elizabeth Clark, Esq., and the United States Trustee (by First Class U.S. Mail).

**IT IS SO ORDERED.**

**Dated August 21, 2018**



Scott W. Dales
United States Bankruptcy Judge